(No. 2678. Feb. 20, 1924.)

## AMERICAN TRUST & SAVINGS BANK OF ALBUQUERQUE v. SCOBEE et al.

### SYLLABUS BY THE COURT.

1.  A suit to quiet title and to remove a cloud upon the same, brought by the holder of a contract of purchase of state lands, whereby it is sought to set aside and annul the reservation of minerals in such lands contained in such contract, is a suit against the state.

2.  In a suit to remove a cloud upon title, brought by the holder of a contract of purchase of state lands against the lessees of said lands from the state for oil and gas exploration, the state, as lessor, is a necessary party defendant.

3.  Whether sections 5247-5253, Code 1915, authorize a proceeding wherein the power of the commissioner of public lands to reserve the minerals, upon the sale of the same, may be tested, quaere.

Appeal from District Court, Otero County; Ed Mechem, Judge.

Action by the American Trust & Savings Bank of Albuquerque, as trustee of an express trust for the benefit of Mayo E. Hickey and others, against M. O. Scobee and others. From an order sustaining demurrers to the complaint, plaintiff appeals. Affirmed.

Marron & Wood, of Albuquerque, for appellant.

The court erred in ruling that the State of New Mexico was a necessary party to the suit. Tindal vs. Wesley, 167 U. S. 204, 42 L. Ed. 137; Evans vs. Field, 27 N. M. 834; Section 4387, Code of 1915. The right of the plaintiff to maintain the action was not questioned, nor could it be successfully. A genereal rule is stated in 5 R. C. L. 649.

When the Commissioner received plaintiff's bid for the land, accepted its money and approved the sale, the rights of the parties, state and the applicant became fixed under the statute, and it became the duty of the Commissioner to give the plaintiff a contract in accordance with those rights, and he had no right or power to add additional restrictions or

reservations, or to sell or contract anything less than title to the lands in question to the plaintiff and his attempt to do so and provisions to that effect inserted by him in the contract were wholly void.

Constitutional and statutory provisions pursuant to which the sale involved herein was made: Sections 1 and 2, Article IV, Constitution; Section 5178, 1915 Code, State Land Office created, Commissioner of Public Lands, Powers, Section 1; Section 5179, 1915 Code, Commissioner of Public Lands, Leases and Sales, Recording, Powers, Reports, Section 2; Section 5189, 1915 Code, Leases; Section 5194, 1915 Code, Lease or Purchase, Applications for, Section 17; Section 5218, 1915 Code, Saline, oil, gas lands, not to be sold, Leases, Section 41; Section 5236, 1915 Code, Sales, Terms, Death of Purchaser, Sec. 59; Section 5233, Leases, Grazing and Agricultural, Mineral Reserved, Sec. 56; Chapter 52, Session Laws 1917, Section 2; Section 10, Enabling Act.

The pretended reservation contained in the formal contract is wholly void, the same is not binding on the plaintiff and it is not estopped to assert the invalidity of the same. By section 5216 of the 1915 codification supra the sale of mineral lands was expressly prohibited and they could only be disposed of by lease. See also Section 5233 and Section 5218 supra.

It was the duty of the Commissioner to pass upon the application and determine whether or not the land was subject to sale. Section 2 of Article 13, State Constitution. Section 5179, 1915 Code supra.

When was it the duty of the Commissioner to so determine the character of the lands so sought to be purchased? It was the duty of the Commissioner to so determine the character of the lands before he offered the same for sale. In the first place the Constitution makes it the duty of the Commissioner to classify all public lands. The term ''public lands'' has a well defined meaning. Words and Phrases, Vol. 6, Old Series at page 5793 and cases cited;

Bardon vs. N. P. R. Co., 148 U. S. 538, 36 L. Ed. 806; Words and Phrases Vol. 6, Old Series, page 5794; Words and Phrases, Vol. 4, Second Series, page 14, citing long line of State and Federal Court decisions.

The federal courts have held in a long line of cases that where the land department of the United States is called upon to pass upon applications to purchase or patent public lands and in so doing to determine whether the lands sought to be purchased are of a character that makes them subject to sale, the department must determine such character at the time it passes upon the application and not postpone its decision to a later date. Shaw vs. Kellogg, 170 U. S. 313, 42 L. Ed. 1050.

The Commissioner did determine that the lands involved herein were non-mineral in character prior to offering them for sale. The presumption is that a public officer has done his duty. See formal contract of sale.

The decision of the Commissioner was final and conclusive and can only be set aside in a direct proceeding on the ground of fraud. Steel vs. Smelting Co., 106 U. S. 147; 27 L. Ed. 226; Burfenning vs. Chicago, St. Paul, etc., Ry., 163 U. S. 321, 41 L. Ed. 175. See also: Jameson v. James, 155 Cal. 275, 100 Pac. 700; Traphagan v. Kirk, 30 Mont-562, 77 Pae. 58; United States v. McIntosh, 85 Fed. 333, 29 C. C. A. 176; Southern Dev. Co. v. Anderson (D.C.) 200 Ped. 272, 281; Gale v. Rest, 78 Cal. 235, 20 Pac. 580, 12 Am. St. Rep. 44; Shaw vs. Kellogg, 170 U. S. 313, 42 L. Ed. 1050; Garter vs. Thompson, 65 Fed. 329, 18 Nor. Mining Reports 134; Cowell vs. Lammers, 21 Fed. 200; Burke vs. Southern Pacific Ry. Co., 234 U. S. 669, 58 L. Ed. 1627; Davis v. Eiebold, 139 U. S. 507, 35 L. Ed. 238.

The character of the land having been determined by the land department, the subsequent discovery of minerals is immaterial. Burke vs. Southern Pacific

Co., 58 L. Ed. 1527; Cyc. Vol. 32, page 1143; Schendell vs. Rogan, 63 S. W. 1001.

When the relator's bid was accepted, his first pay- ment made and receipted for, he became entitled on payment of the balance of the purchase price to a deed for the land or, at his option, a contract under the deferred payment plan calling for a deed to the land. No other terms than those set out and referred to in the notice could legally be inserted in the con- tract. Section 10, Enabling Act. Every rule of the land office lawfully promulgated and not repugnant to the statutes must likewise be read into the con- tract. Armour Packing Co. vs. United States, 14 L. R. A. (N. S.) 400, 82 C. C. A. 135, 153 Fed. 1; Union Central Life Ins. Co. vs. Pollard, 36 L. R. A. 271; Corpus Juris, Vol. 13, page 560; Walpole vs. State, 163 Pac. 848; Burke vs. S. Pac. Ry. Co., 58 L. Ed. 1527; Words and Phrases, First Series, Vol. 5, page 3975.

The pretended reservation inserted by the Com- missioner is therefor void. Davis vs. Wiebold, 139 U. S. 507, 35 Law Ed. 238; Sullivan vs. The Iron S. M. Co., 143 U. S. 431, 38 L. Ed. 214; Cowell vs. Lammers, 21 Fed. 200; Burke vs. So. Pac. Ry. Co., 234 U. S. 669, 58 L. Ed. 1527; Ameder M. G. M. Co. vs. South S. H. G. M. Co. et al., 36 Fed. 668; Walpole vs. State, 163 Pac. 248.

The relator is not estopped to assent the invalidity of the reservation. It is a well settled principle of law that an admission as to the legal effect of a con- tract or an admission as to the law does not work estoppel. 16 Cyc. 757. The same is true of a mixed question of law and fact. Daub vs. No. Pac. Ry. Co., 18 Fed. 625; Burke vs. So. Pac. Ry. Co., supra; Galpin vs. Chicago, 269 Ill. 27, 109 N. E. 713; Finch vs. Theiss, 267 Ill. 65, 107 N. E. 898.

The insertion of the void provision in the formal contract did not affect or destroy its validity. Words and Phrases, First Series, Vol. 7, pages 6291-6292;

2 Blackstone Comm. 16-18; Gunter vs. Walpole, 176 Pac. 290. See also: Shaw v. Kellogg, 42 U. S. (L. ed.) 1050, 170 U. S. 313; Cowell v. Lammers, 21 Fed. 200; Davis v. Wiebold, 139 U. S. 507; 35 U. S. (L.ed.) 238; Burke v. So. Pac. Ry. Co., 234 U. S. 669; 58 U. S. (L. ed.) 1527; Amador Gold M. Co. v. South S. H. C. M. Co., 36 Fed. 668; Walpole v. State Board, 163 Pac. 848 (Colo.); Silver Bow M. Co. v. Clark, 5 Pac. 570 (Mont); Sullivan v. Iron S. M. Co., 143 U. S. 431; 36 U. S. (L. ed.) 214.

The contract in this case is not within the language of Section 4, Chapter 98 of the Session Laws of 1919. Mobile Docks Co. vs. City of Mobile, 40 So. 205, 3 L. R. A. (N. S.) 822.

The Legislature had no authority to ratify the void act of the Commissioner. State vs. Shaw, 28 La. 67; State vs. Executors of Buttles, 3 Ohio St. 309; Jewell Nursery Co. vs. State, 4 S. D. 213. The state, like a private person, is prohibited from violating the obligation of a private contract entered into by it See: State Land Board vs. Lee et al., (Sup. Court of Oregon) 165 Pac. 372 at 375; Woodruff vs. Trapnall, 10 Howard 190, 13 U. S. (L. ed.) 383 at 385; United States vs. Mayor, etc., of New Orleans, 103 U. S. 358; 26 U. S. (L. ed.) 395 at 399. Green vs. Biddle, 8 wheat, 1; 5 U. S. (L. ed.) 547 at 570; State of New Jersey, 7 Cranch. 164; 3 U. S. (L. ed.) 303; Fletcher vs. Peack, 6 Cranch. 87; 3 U. S. (L. ed.) 162; The Provisionce Bank vs. Billings & Pittman, 4 Peters 514; 7 U. S. (L. ed.) 939 at 945.

The prohibition of the constitution against laws impairing the obligation of contract applies to all contracts, executed or executory, whoever may be parties to them. United States vs. Quincy, 71 U. S. 535, 18 Law. Ed. 403 at 408; Seattle R. & S. Ry. Co. vs. City of Seattle et al, 190 Fed. 75 at 79.

We find "obligation of contract" to be defined by our words in Colby vs. City of Medford et al; 167 Pac. 487 at 499. See also Words and Phrases, Vol.

3, N. S. pages 671 and 672; State, ex rel Brown, et al vs. McPeack, 47 N. W. 691 at 692.

Any impairment of the obligation of a contract (the degree of impairment being immaterial) is within the prohibition of the Constitution. See: Walker vs. Whitehead. 83 U. S. 314, 21 L. Ed. 357 at 358; People vs. Platt, (N. Y.) 17 Johnson 195, 8 A. Dec. 322.

The ratification of the unauthorized act of the Commissioner is prohibited by Sections 16 and 25, Article 4, of the Constitution of New Mexico. See Chapter 98, Session Laws of 1919. 32 Cyc. 1143.

Such lands were held in private ownership. The Commissioner had therefore no further jurisdiction except to receive payment for the same and execute a deed to the land. 32 Cyc. 1143.

The Legislature could not provide for a second determination of the character of the land, private rights having in the meantime. attached under the first. R. C. L. Vol. 6, page 318, Sec. 307; Town of Strafford vs. Town of Sharon, 4 L. R. A. 499 at 500.

The reservation of "the minerals therein", inserted in plaintiff's contract, does not include petroleum or gas. See House Report No. 2655, 54th Congress, 7th Session; Dunam vs. Kirkpatrick, 101 Pa. St. 43, 47 A. Rep. 696; Silver vs. Bush, 213 Pa. St. 195, 62 Atl. 832; Detlor vs. Holland, 57 O. St. 492, 40 L. R. A. 266; McKinney vs. The Gas Company; 134 Ky. 239; 120 S. W. 314; Clipper Mining Company vs. Ealey, 194 U. S. 220; Chrisman vs. Miller, 49 L. Ed. 770.

W. A. Hawkins, Del W. Harrington and H. H. McElroy, all of El Paso, Texas, and Geo. C. Taylor, of Albuquerque, for appellees.

It was held by this court in State vs. Field, 201 Pac. 1059, that the State could not be sued without its consent. In the case at bar the State has consented to be sued relative to contents over its lands, only in a certain way, as is shown hereafter.

The District Court was without jurisdiction to take and try this case because the statutory mode of procedure was not complied with. The District Court has no original jurisdiction of contests in the matter of claims, or priority of claims to rights or interests in State lands—it has only appellate jurisdiction from the decision of the Commissioner of Public Lands. Secs. 5247, 5248, 5249, 5250 and 5251 of the Code of 1915; Dallas vs. Swigart, 24 N. M. 3.

Plaintiff's pleading shows that the legal title to the fee of the lands involved in this suit is vested in the State of New Mexico. We have an exact like situation with reference to contests relative to the public lands of the United States, and the rule there is, that all questions of right should be solved by appeal to the Land Department and not to the courts. Cosmos v. Eroy Eagle, 190 U. S. 301; New Orelans v. Payne, 147 U. S. 261; Michigan Land Co. v. Rust, 168 U. S. 589; United States v. Thomas, 151 U. S. 577; Brown v. Hitcheow, 173 U. S. 473; Peruzo v. Dodge, 163 U. S. 160; Kirwon v. Murphy, 189 U. S. 35.

Plaintiff's petition in this case shows clearly that he claims an *interest* in the oil and gas on the lands involved, and that he has a *prior claim* thereto, over these defendants, and that his such interest and prior claim grows out of a *contract* made by the Commissioner of Public Lands, and that by virtue thereof, he has a *prior claim* thereto, and that defendant's claim an interest in such oil and gas by virtue of certain leases made to them by the Commissioner of Public Lands, thereby showing the foundation of a right to contest before such Commissioner of Public Lands, plaintiff's claim to such oil and gas in the manner prescribed in Section 5247 New Mexico Code, and such claimant, if he be aggrieved by the decision of such commissioner, then to appeal to the District Court under the procedure provided by and under Sections 5250 and 5251.

These statutory provisions are special in their na-

ture, and provide special proceedure to give the District Court jurisdiction of causes of action arising out of any alleged deprivation of rights by the Commissioner of Public Lands, and being special in their nature *exclude any other general* grounds for jurisdiction that the District Courts may have.

This is not an equitable proceeding to remove cloud on title, but is an alleged denial of right to the plaintiff, growing out of acts of the Commissioner of Pubilc Lands, relative to the State lands, under his constitutional and statutory authority and powers.

As was stated in LITCHFIELD v. RICHARDS, 9 WALL 575; 19 L. ed. 681—

"The officers of the land department are by law made a special tribunal for administration of the public lands, and their jurisdiction is exclusive, and will not be interfered by the courts."

By our constitution, Art. 5, Sec. 1; Art. 13, Sec. 2, and Sec. 5178 and 5179, the office of Commissioner of Public Lands is created and vested with full power to select, locate, classify, and with complete direction, control, care, disposition, management and custody of all state lands.

The principle that the State is a necessary party is well illustrated in a proceeding to adjudicate oil and gas rights in Moore vs. Jennings, 34 S. E. 794, where the owners and lessors of one tract of land brought suit against the lessees only of an adjoining tract but without making the fee owners of such adjoining tract parties to the suit and on appeal the point was made.

In Pyle vs. Henderson, 46 S. E. 791, a proceeding to cancel, as a cloud upon title, (in the case at bar plaintiff claims that his suit is one to remove a cloud upon title) an oil and gas lease made to defendants by persons who were not parties to the suit, the court held that the lessor or landlord is a necessary party to the suit.

In Stutsmith vs. Fisher Oil Co., 35 S. E. 15, persons holding respectively a one-sixteenth, an undivided one-fourth interest, and a royalty in, an oil and gas lease were held to be necessary parties to a suit to cancel the lease under which the defendants were operating. See also South Penn Oil Co. vs. Miller, 175 Fed. 729 at page 736; Vincent Oil Co. vs. Gulf Refining Co., 195 Fed. 434 and State, ex rel Evans vs. Field, 201 Pac. 1059.

Neither the Acts of Congress nor the legislation of New Mexico prohibit the act of reservation of the minerals, and as the State may, in the absence of prohibitory legislation, enter into contracts the same as private individuals; (Dikes v. Miller, 25 Tex. Supp p. 290, Dugans v. U. S. 3 Wheat, 172, U. S. v. Tingey, 5 Pet. 114, U. S. v. Bradley, 10 Pet. 343, U. S. v. Sim, 15 Pet. 290, Neilson v. Lazon, 12 How. 107) the reservation here made was distinctly within the power of the Commissioner to make, the same as though the contract had been between private individuals.

The constitutional and statutory provisions relative to the office, duty and powers of the Commissioner are contained in Art. 5, Sec. 1, Par. 1, Art. 13, Sec. 2, of the Constitution, Art. 5178, etc. of the Code, 1915, from which we find that the office of Commissioner is one created by the Constitution, following which, there was enacted by the legislature Art. 5178 of the Code, but, search all these as we may, we find nothing that can be construed to prohibit the Commissioner to make the contract containing the reservation involved in this case.

It is an established rule of law that the estate in land may be segregated and one estate owned by "A" and another by "B", etc.

[1] That is, "A" may own the surface with all the necessary appurtenant rights for its use and purpose.

[**2**]  "B" may own the coal under the surface with the right of ingress and egress, and the right to use so much and no more of the surface as is reasonably necessary to the work of extracting and removing the coal.

[**3**]  Likewise "C" may own the oil and gas.

[**4**]  and "D" may own the stone, etc.

To support the foregoing, we deem it necessary to cite only a few of the leading authorities.

"A reservation or exception of all the minerals in the tract conveyed is a separation of the estate in the mineral from the estate in the surface."  Thornton Oil and Gas, 496.

"A reservation of the mineral and mining rights from a grant of the estate, followed by a grant to another of all that which was first reserved, vests in the second grantee an estate as broad as if the entire estate had first been granted to him with a reservation of the surface."  Marvin v. Brewster, 55 N. Y. (St.) 538; Wardell v. Watson, 93 Mo. 107; 5 S. W. 605; Farnum v. Platt, 8 Pick, 339; Munn v. Stone, 4 Cush, 146.

"What is true of a reservation is true of an exception." Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142; 25 S. W. 934; Norton v. Snyder, 2 Hun. 82; Sloan v. Furnace Co., 29 Ohio St. 568; Baker v. McDowell, 3 W. & St. 184; Whitaker v. Brown, 46 Pa. St., 197; Alden's Appeal, Pa. St. 182, ——; Foster v. Punk, 109 Pa. St. 291; Lillibridge v. Lackawanna Coal Co. 143 Pa. St. 293; 22 Atl.,1035; in case of reservation or exception, grantor has the right to enter on surface without any express authority.  Wardell v. Watson, supra. Williams v. Gibson, 40 So. 350; Dietz v. Mission Transfer Co. 3 Cal. Un. Rep. Cases 354; Pac. 423."

"In case of a reservation of the minerals, such minerals descend to the grantor's heirs."  Whittaker v. Brown, 46 Pa. St., 197.  "All minerals" includes oil and gas. Baker v. Campbell-Ratcliff Land Co. 167 Pac. 468; Gill v. Weston, 110 Pa. St. 305; I Atl. 921.  Murray v. Allard, 100 Tenn. 100; 43 S. W. 355.

"The owner of land may sell the soil to one and the mines underneath it, or the timber on it to another, or reserve them, by an exception in the deed, to himself, and such an exception in the deed impliedly includes the right to enter on the land and cut the timber or work the mines." Kincaid v. McGowan, 88 Ky. 802; 4 S. W. 987.

"The State in all its contracts and private dealing with individuals, must be adjudged by the same rules, and abide by the same rules under which private individuals act." Black, Recession and Cancellation, Sec. 333.

To the effect that the reservation made by the Commissioner was valid, we cannot present a clearer or more forceful argument than that contained in the brief filed by the defendants in the case of STATE V. NEW MEXICO, Ex Rel, CHRISTIAN OTTO, VS. NELSON FIELD, COMMISSIONER, in the District Court of the First Judicial District at Santa Fe, involving the same reservation in a similar contract with the Commissioner.

Oil and gas contained in or obtainable through the land are minerals. Stoughten's Appeal, 88 Pa. 188. Westmoreland vs. DeWitt, (Pa.) 18 Atl. 724; Gill vs. Weston (Pa.) 1 Atl. 921; Marshall vs. Mutton (Pa.) 36 Atl. 201; Nonmaker vs. Amos, 76 N. E. 951. "That petroleum is mineral." Kelly vs. Ohio Oil Co., 49 N. E. 399; Natural Gas Co. vs. Ullery, 67 N. E. 494.

The decisions are unanimous in holding that petroleum is a mineral in the broadest sense of that term. Ipson v. Rex Crude Oil Co. (Cal.) 82 Pac. 317; Poe v. Ullrey (Ill.) 84 N. E. 46; Richmond Nat'l. Gas Co. v. Dokeepart (Ind.) 76 N. E. 525; Lanyon v. Freeman (Kan.) 75 Pac. 995; Kelly v. Ohio Oil Co. (Ohio) 49 N. E. 399; Swayne vs. Lone Oil Co. (Tex.) 98 Tex. 597; 86 S. W. 740; San Oil Co. v. Colquitt, (Tex.) 69 S. W. 169; Bender v. Brooks (Tex.) 127 S. W. 168; Williamson v. Jones (W. Va.) 19 S. E. 436; Wiltson vs. Zost (W. Va.) 28 S. E. 781; Preston v. Which (W. Va.) 50 S. E. 236.

A reservation of "all minerals" includes oil.

Weaver v. Richards, 120 N. W. 818, where authorities are cited.

"MINERAL LANDS" embrace lands chiefly valuable for petroleum.

Burke v. S. P. Co. 234 U. S. 676-679. See also: Deetz vs. Mission Transfer Co., 30 Pac. 380 at 382; Wait vs. Baldwin, 27 N. W. 697.

Am. Trust & Sav. Bnk. of Alb. v. Scobee et al., 29 N. M. 436

The parties having arrived at an agreement and understanding that the contract of sale of the land from the State to Hickey was to be put in writing before it became effective, it is elementary that there was no binding obligation between them until the contemplated instrument was written and executed. Northwestern Lbr. Co. vs. Grays Harbor & P. S. Ry. Co., 221 Fed. 807 and cases there cited.

Having entered into the written agreement, a party thereto may not repudiate it under the claim that it is not in accordance with the former understanding. Lock vs. Murdock, 20 N. M. 522; Walker vs. Brown, 28 Ill. 378, 81 Am. Dec. 287.

There is no prohibitive statute, State of federal, preventing the execution of the contract here in question.

"The public is an ever existing grantee, capable of taking dedications for public use." Wells v. Pennington, 48 N. W. 305; Dykes v. Miller, 25 Tex. Supp. 81; R. C. L. p. 343, Par. 90.

The Commissioner of the General Land Office is the proper officer to accept relinquishments of title by a grantee to the State, and in the absence of any legal provision or prohibition, he must be deemed to have authority to accept the relinquishment of title on behalf of the State. 22 R. C. L., p. 344, Par. 91.

The power of a government, state or national, to enter into contracts, not specifically prohibited by statute and not contrary to public policy, is an incident to the general right of sovereignty. In the absence of restrictive statutes, public officers may make contracts in the same manner as private agents, and the scope of their powers to so contract may depend on implications as well as on express delegations of authority. There is a presumption of law that every public officer does his duty, and furthermore, until the contrary is shown, that persons acting in a public office act with authority. This presumption is very strong. See leading case of Downing v. Rugar, 21

Wend (N. Y.) 178. These propositions are ably discussed in Dikes v. Miller, 25 Tex. Supp., p. 290, and the authorities there cited. Dugans Ex. v. United States, 3 Wheat. 172; United States v. Tingey, 5 Pet. 114; United States v. Bradley, 10 Pet. 343; United States v. Sim, 15 Pet. 290; Neilson v. Lazon, 12 How. 107; United States v. Lane's Adm. 3 McLean, 365.

We recall here, the reference made heretofore to the acknowledgment made to the plaintiff's signature, and deem it only necessary to cite a few of the many authorities on this feature, that plaintiff is bound by his acknowledgment. Grider v. American Freehold Land Mortg. Co. 99 Ala., 281, 12 So. 775, 42 A. S. 61, Le Mesnager v. Hamilton, 101 Cal. 532, 35 Pac. 1054, 40 A. S. R. 83; Strauch v. Hathaway, 101, Ill. 11, 40 Am. Rep. 195; Barnett v. Shackleford, 6 J. J. March (Ky.) 523, 22 Am. Dec. 100; Council Bluffs Sav. Bk. v. Smith, 59 Neb. 90, 80 N. W. 270, 80 A. S. R. 669; Mencke v. Rosenberg, 202 Pa. St. 131, 51 Atl. 767, 90 A. S. R. 621; Wester v. Hurt, 123 Tenn. 508, 130 S. W. 842, 30 L. R. A. (N. S.) 359; Kocourek v. Marak, 54 Tex. 201, 38 Am. Rep. 623; Murrell v. Diggs, 84 Va. 900, 6 S. W. 461, 10 A. S. R. 894; 55 Am. Dec. 774 note; 54 A. S. R. 153 note; 66 A. S. R. 925 note; 41 L. R. A. (N. S.) 1163, 1171, note.

Nor may fraud, mistake, or imposition be shown as a foundation for attacking the truth of the recitals of the certificate, it appearing that the party was before the officer for the purpose of acknowledging the execution of the instrument. Baldwin v. Snowden, 11 Ohio St. 203, 78 Am. Dec. 305; Singer Mfg. Co. v. Rook, 84 Pa., St. 442, 24 Am. Rep. 204; Kocourek v. Marak, 54 Tex. 201, 38 Am. Rep. 623; 1 Am. Dec. 81, note. See also: Bryan v. Ramirez, 8 Cal. 461, 68 Am. Dec. 342; Kerr v. Russell, 69 Ill. 666, 18 Am. Rep. 636.

### OPINION OF THE COURT.

PARKER, C. J.   One Mayo E. Hickey under date of February 28, 1913, filed application for the purchase of a large tract of state land at $3 per acre, and deposited with the commissioner of public lands the sum of $2,500 to defray the expenses of appraisement and advertising the said land for sale. Such application contained the following provision:

"I further state that the land applied for here is essentially nonmineral land, and this application is not made for the purpose of obtaining title to mineral, coal, oil or gas lands fraudulently, but that the sole object of obtaining title to the land applied for is for grazing and agricultural purposes."

In pursuance of said application, the commissioner of public lands advertised the said lands for sale by a notice dated March 7, 1913. On June 9, 1913, a sale at public auction of the said lands was had by the commissioner at Alamogordo, and the said M. E. Hickey became the purchaser thereof at the total price of $142,882.26, and paid down one-tenth of the purchase price amounting to $14,288.23. On June 14, 1913, the said Hickey and the said commissioner entered into a written contract for the purchase of the said lands, which contract contains the following provision:

"That this land is being purchased for the purpose of grazing and agriculture only; that while this land herein contracted for is believed to be essentially nonmineral land, should mineral be discovered thereon, it is expressly understood and agreed that this contract is based upon the express condition that the minerals therein shall be and are reserved to the fund or institution to which the land belongs, together with the right of way to the commissioner, or any one acting under his authority, to at any and all times enter upon said land and mine and remove the minerals therefrom without let or hindrance."

On January 1, 1918, a contract concerning the purchase of these lands was entered into by and between the commissioner and the appellant, the American Trust & Savings Bank of Albuquerque, as trustee, and

as successor in interest of the said Hickey, whereby the time for payment of the purchase price was extended for an additional period of time, but the contract is otherwise in the same form as the former contract and contains the same condition in regard to reserving the minerals from the sale.

On August 20, 1919, appellant filed a bill in the district court of Otero county to quiet its title in and to the said lands as against the appellees, to whom the commissioner had in the meantime made oil and gas leases covering portions of the same. The bill is filed upon the theory that the action of the commissioner in inserting the condition or reservation in the contract of the oil, gas, and mineral rights in the said lands, and his action in leasing for oil and gas the said lands to third persons, was in excess of his authority and void, and that the said oil and gas leases constituted a cloud upon the appellant's title, which it sought to have removed and its title quieted. Appellees severally filed demurrers to the complaint, which were sustained by the court in most particulars, and the appellant electing not to plead further, a judgment of dismissal was entered, from which judgment the cause is here upon appeal.

[**1**]  1. Appellees demurred to the complaint upon the ground that it failed to state a cause of action, and that there was a defect of parties defendant. The demurrer was based upon the proposition that the state was a necessary party under the circumstances pleaded, and, as it had not been made a party, appellant could not maintain the action. Counsel for appellant in opposition to this proposition cites and relies upon Tindal v. Wesley, 167 U. S. 204, 17 Sup. Ct. 770, 42 L. Ed. 137.

In order to prevail in this case, the appellant would be required to establish two things. It must first establish that it has an equitable title in fee to the lands in question, and that consequently the oil and gas leases issued by the state to the appellees are invalid

and void. In order to establish that it has an equitable title in fee to the lands, it must show that its contract with the state is another and a different contract than what is shown by its terms. It must show that the state, through its commissioner of public lands, has inserted conditions and reservations in the contract which it had no right to insert. It must go further and show that the oil and gas leases issued to the appellees, in which the state has a direct pecuniary interest, are void and of no effect. How it can be said under such circumstances that the state is not a necessary part to a proceeding in which its rights are diricely called in question is hard for us to understand. It is true that a person having title to real estate or personal property may maintain an action against any person claiming to have rights therein under the authority of the state, and may maintain an action against such person notwithstanding the rights of the state may be indirectly involved. Of this class of cases, Tindal v. Wesley, 167 U. S. 204, 17 Sup. Ct. 770, 42 L. Ed. 137, and U. S. v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171, are examples. In these cases actions in ejectment were brought against persons in possession of real estate under authority of the state of South Carolina in the former case, and of the United States in the latter. In each of these cases the plaintiff showed good title to the property, and, notwithstanding the claims made by the defendant, the Supreme Court of the United States held that in the one case the action was not against the state, and in the other that it was not against the United States. But in the case at bar the plaintiff cannot show a good equitable title in fee to this land without setting aside and annulling an important reservation inserted by the state in its contract, thereby making the contract read materially different from what its terms import, and thereby taking from the state a valuable property right. It is true that no state officer is made a formal party to the proceeding, nor is the state as such named as a defendant, which, indeed, it could not be. But this is of no consequence, if, in fact, the state's rights are di-

rectly involved. Herein lies the fundamental infirmity of the proceeding. The state, before its contract can be canceled or reformed, must be before the court and in these circumstances the state has not given its co--sent to such action. A good case somewhat similar to this is the case of Sanders v. Saxton, 182 N. Y. 477, 75 N. E. 529, 1 L. R. A. (N. S.) 727, 108 Am. St. Rep. 826. In that case an action was brought by the plain-tiff, as owner in fee of certain lands, against the defendants, as commissioners of the land office of the state of New York, and as controller, to have certain deeds which had been executed by the controller to the state on tax sales adjudged illegal and void. The point was made in that case, as in this, that this was a suit in effect against the state:

"The action is both in effect and in form to cancel and remove the deeds to the people of the state of New York as clouds upon the plaintiff's title. The grantee in such a deed is plainly a necessary party to such an action, as it is the title of that grantee that is to be passed upon, and it cannot be adjudged void unless he is brought in court. No one would ordinarily think of disputing this proposition. The only reason for omitting to make the state a party in this case is that it cannot be made a party, and for that reason it is sought to avoid the immunity that the state possesses by making its officers parties in its stead. * * * Now, as the only object and purpose of a suit in equity to remove a cloud on the title to property is to have any adverse title that may be asserted under such cloud passed on and adjudged void so that the plaintiff in possession may be forever afterwards free from any danger of the hostile claim, it would seem plain that where the judgment in an action cannot conclude or bind a party claiming under the adverse title the action must fail."

Attached to this case is an extensive note citing many of the cases.

We recently examined this question in State v. Field, 27 N. M. 384, 201 Pac. 1059. That was a mandamus case against the commissioner to compel him to issue a deed free from the reservation of minerals. We held the proceeding could not be maintained because it was a suit against the state. In that case, however, we quite thoroughly discussed the principles governing

the question as to when, and when not, a suit is against the state.

[**2**] 2. There is another consideration which is prohibitive of the maintenance of this action. The state is the owner of the fee of this land, and is the landlord or lessor of the appellees.

If the oil leases of appellees are to be canceled and set aside, the state will be a direct sufferer by such result. It will lose its rentals and royalties reserved in the leases. It is a matter of common knowledge that the state has received rentals under these same kind of oil leases running into hundreds of thousands of dollars, and is vitally and directly interested that no part of such income shall be cut off. It is likewise interested in the royalties to be received under these leases when development shall have proceeded to the point of commercial production. If its lessees are to be driven off from their leases, the state is remediless, there being no personal liability on the part of the lessees to continue to pay the rentals, or to develop the production.

There is a general rule that all persons whose interests will necessarily be affected by any decree is a given case, are necessary and indispensable parties, and the court will not proceed to a decree without them. Where such necessary parties cannot for any reason be brought before the court, there is nothing to be done except to dismiss the bill, for the suit is inherently defective. See 21 C. J., "Equity," § 276, where all of the cases except those from New Mexico seem to be collected. See, also, Walrath v. County Commissioners, 18 N. M. 101, 134 Pac. 204; Miller v. Klasner, 19 N. M. 21, 140 Pac. 1107; Page v. Town of Gallup, 26 N. M. 239, 191 Pac. 460, where this principle is noticed and applied. Specific application of this doctrine is made to oil and gas leases in Pyle v. Henderson, 55 W. Va. 122, 46 S. E. 791; Moore v. Jennings, 47 W. Va. 181, 34 S. E. 793; Steelsmith v. Fisher Oil Co., 47 W. Va. 391, 36 S. E. 15; Vincent Oil Co. v. Gulf Refining Co., 195

Fed. 434, 115 C. C. A. 336; South Penn. Oil Co. v. Miller, 175 Fed. 729, 99 C. C. A. 305.

This being the situation, it is clear that the district court was correct in sustaining the demurrers for want of necessary parties defendant, and, the state not being subject to suit in these circumstances, there was nothing to do but to dismiss the bill.

In State v. Field, 27 N. M. 384, 201 Pac. 1059, we said:

"Whether the commissioner of public lands has power and authority to make the reservation, which he has made in this case, it is unnecessary for us to determine. If he has not the power, when the purchaser takes a deed with the reservation contained therein, there may arise a question as to the effect of the reservation in some controversy which may arise when the commissioner or some one under him begins to explore for minerals; but mandamus is not a proper remedy to try such a question in a case of this kind where the state itself is involved."

Counsel for appellants cite and rely upon this statement. In regard to the statement, we will say that it was dictum, there having been no argument upon the question, and there being on such question in that case. It will be sufficient, however, to say in this connection that appellant has not brought itself within the terms specified in the statement.

[3] 3. It is unfortunate that no decision can be made defining the power of the commissioner in these circumstances, but such is the case, and anything we might say would be dictum, and not authorized or binding. In this connection, however, it has occurred to us to suggest the query whether sections 5247-5253, Code 1915, might not afford a remedy whereby the question of the commissioner's power may be determined. The applicability of this statute in some circumstances was recognized in Dallas v. Swigart, 24 N. M. 1, 172 Pac. 416. In that case the question was when title to school sections passed from the federal government to the state, and when, consequently, the commissioner had power to make leases of the same.

An examination of the terms of the statute discloses that the scope of the inquiry therein authorized is very broad, and would seem to cover almost any kind of an injury as to respective rights of claimants under contracts or leases emanating from the office of the commissioner. We make this statement merely by way of suggestion, not desiring to express any opinion thereon.

From all of the foregoing, it appears that the judgment of the district court in sustaining the demurrers and dismissing the complaint was correct, and should be affirmed; and it is so ordered.

BRATTON and BOTTS, JJ., concur.