[No. 3607.   Dec. 27, 1930.]

[Rehearing Denied Feb. 2, 1931.]

LEVY v. KALABICH.

[295 Pac. 296.]

George E. Remley, of Raton, for appellant.

Fred J. Voorhees and A. C. Voorhees, both of Raton, for appellee.

OPINION OF THE COURT

WATSON, J.

Andrew Tiberti and wife sued to enjoin a judicial sale of real estate under a decree foreclosing a mechanic's lien in favor of A. L. Levy against Milo Kalabich. The amended complaint was dismissed, but injunction was awarded upon the intervention of Edith Kalabich, wife of Milo, on the sole ground that the real estate in question was community property, and that the intervening wife had not been made a party defendant in the foreclosure suit. The court held that the decree was void for lack of jurisdiction. Levy, plaintiff in the foreclosure suit, and defendant in the injunction suit, has appealed. Several questions raised need not be considered, since one is decisive, viz., that Edith Kalabich was not a necessary party to the suit to foreclose the lien on the community real estate of herself and her husband.

We venture to say that the practice in this state has not conformed generally, if at all, to the holding of the learned trial judge. So we proceed first to examine appellee's contention in its favor.

He urges that such holding is the necessary result of Beals v. Ares, 25 N. M. 459, 185 P. 780, 788; the subsequent enactment of Laws 1915, c. 84, and the later decisions in Terry v. Humphreys, 27 N. M. 564, 203 P. 539, and Adams v. Blumenshine, 27 N. M. 643, 204 P. 66, 20 A. L. R. 369. He argues that, since the wife's interest is equal to the husband's, even though the dominion and control be his, as stated in Beals v. Ares, supra, and since the husband's dominion and control over the real estate was done away with by Laws 1915, c. 84, as said in Terry v. Humphreys, supra, both husband and wife are necessarily parties to a proceeding in which it is sought to reach community real estate.

An important premise on which appellee relies has been repudiated by this court in Fidel v. Venner, 35 N. M. 45, 289 P. 803, where we disapproved the broad expression in Terry v. Humphreys, supra; held that Laws 1915, c. 84, did not do away with the husband's management and control of community real estate, except to require the wife's joinder in deeds and mortgages; and specifically decided that a lease for a definite term, not involving consumption of part of the realty, may be executed by the husband alone. ·That decision also refutes the contention here made that the lease made by Milo Kalabich, and his consent that his lessee make the improvement resulting in Levy's lien, were void.

The effect of Fidel v. Venner, supra, is that the husband's former control and management of both personalty and realty are limited only as against fraud on the wife's interest, as it always was, and against deeding or mortgaging the realty. Beals v. Ares, supra, did not purport to lay down any new rule as to the wife's interest, but undertook to declare the law as it had always existed in New Mexico, except perhaps under Laws 1901, c. 62. So, if appellee's contention is sound, it has always been the law, and bench and bar have simply overlooked it.

There is logic in the contention that, if husband and wife are equal owners of property, they are both necessary parties to contracts and to litigation which may affect it. Appellee's criticism of the agency theory is also not without merit. The general principles of agency do not permit judgment affecting the principal's property in a suit against the agent.

But this is common-law logic. It does not often apply when considering the property rights of husband and wife in the community property states. Our system is statutory. It has developed through the legislative conference of this or that specific right or power upon the one or the other of the members of the community, without endeavor to preserve an harmonious theory. The common law was developed through the reasoning of judges, always endeavoring to be true to the fundamental theory of the nature of the marriage relation. The basic principle of our system is that the matrimonial gains are kept separate from other property and dedicated to the community. This is a feature of the civil law. It is unknown to the common law. The nature of the community and the residence of title to its property have long been subjects of controversy; in this court as elsewhere. But we need not be troubled with it here. The point we make is that we shall not be able to settle the matter, as the common law probably would, by proceeding from the general pronouncement in Beals v. Ares, and letting that theory carry us whither it will. As this court has recently suggested, community estate is another marital cotenancy existing in our jurisprudence side by side with tenancy by entireties, but differing greatly from it. In re Chavez's Estate, 34 N. M. 258, 280 P. 241, 69 A. L. R. 769.

The jurisprudence which Kearney found in New Mexico did not, so far as we are aware, contemplate the wife as a necessary or proper party to litigation involving the community property. The adoption of the common law in 1876 did not abolish the community system. When, in 1907 (chapter 37, § 16), we reduced the matter to Code, and prescribed "the husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has

of his separate estate, * * *" we did not initiate that "management and control." We declared an historic condition. When we changed it in 1915, we disturbed it only with respect to the execution of deeds and mortgages. Fidel v. Venner, supra. The point here made is that, as the wife was not originally a necessary party, and as legislation has not made her such, she is not now a necessary party.

The legal fact is that this "management and control" of the husband has embraced the right and duty to represent the community in its litigation. It does not matter that this is not a right and duty generally appertaining to an agency. The fact that judges and writers have often used that word in their efforts to define the husband's relation to the wife with respect to their common property does not require that their rights and duties are to be determined strictly according to the principles of agency. It is a mere imperfect analogy; an attempt, like many similar efforts, to define this anomalous relation and property right in terms of the common law.

In Reade v. Lea, 14 N. M. 442, 95 P. 131, 133, the territorial Supreme Court said, upon authorities cited:

"In all suits affecting the community property the wife is not a party, but such suits must be brought by the husband * * * or against him. * * * If the community property be stolen, the indictment alleges that he is the owner * * *; and his wife's consent to the taking of the property affords the thief no defense."

These rules of practice were not challenged by the late Justice Abbott, who dissented in that case, by Mr. Justice Holmes, who wrote the reversing opinion for the Supreme Court of the United States, Arnett v. Reade, 220 U. S. 311, 31 S. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040; nor by former Justice Roberts in Beals v. Ares, supra. They were not involved in the holding that the nature of the wife's interest is something more than expectancy, that it is not inferior to that of the husband who controls and manages it, and that it is to the common law, not the civil, that we are to look to determine a right not prescribed by statute. These holdings were not arrived at by overturning those rules of practice, but notwithstanding them. They state the law as it existed in 1908. No statute or decision has changed them.

In Beals v. Ares, supra, this court declared:

"This act was modeled after the civil law of Spain and Mexico, and necessarily we would look to that law for definitions and interpretations, just as we would look to the decisions of the courts of a sister state for the construction and interpretation of statutes taken from such state."

What we here seek is the meaning and extent of the statutory "management and control." It is not a technical common-law term. Had the statute declared the husband the "agent" of the community, we might well search the common law to ascertain what rights and duties were implied. But as we have heretofore ventured to say, the Legislature was merely declaring established law. The husband's "management and control" of community property was historic in the civil law, but a stranger to the common law. Interpreting the expression as the above-quoted passage directs, we find that the husband's "management and control" embraces the right and duty to represent the community in its litigation.

Thus we conclude that the judgment is fundamentally erroneous. It will be reversed, and the cause will be remanded, with a direction to dismiss the intervention. It is so ordered.

BICKLEY, C. J., and SIMMS, J., concur.

PARKER and CATRON, JJ., did not participate.